IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NUTRACEUTICAL CORPORATION, a Delaware corporation; and NUTRAMARKS, INC., a Delaware corporation,<br><br>            Plaintiffs / Counterclaim Defendants,<br><br>v.<br><br>NUTRACHAMPS, INC., a Canadian company,<br><br>            Defendant / Counterclaim Plaintiff. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18-cv-00400-DB-DAO<br><br>District Judge Dee Benson<br><br>Magistrate Judge Daphne A. Oberg |

      Before the court are five motions: Plaintiffs' Motion for Partial Summary Judgment on Nutraceutical's First and Second Causes of Action (Dkt. No. 56); Plaintiffs' Motion for Partial Summary Judgment on NutraChamps' Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses (Dkt. No. 59); Defendant's Motion to Exclude Testimony and Report of Plaintiffs' Expert Witness (Dkt. No. 62); Defendant's Motion for Partial Summary Judgment on Plaintiffs' Third, Fourth, Fifth, Sixth, and Seventh Causes of Action (Dkt. No. 63); and Defendant's Motion to Strike Brief in Support of Plaintiffs' Second Motion for Partial Summary Judgment. (Dkt. No. 76.) The motions have each been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.

## FACTUAL AND PROCEDURAL BACKGROUND

Nutraceutical Corporation and NutraMarks, Inc. ("Plaintiffs" or "Nutraceutical") and NutraChamps, Inc. ("Defendant" or "NutraChamps") are each in the business of selling dietary supplement products to the public. Plaintiffs claim that Defendant has "brazen[ly] infringe[d]" on Nutraceutical's trademarks and trade dress rights, including: (i) Nutraceutical's trademark in its Hairfluence product, (ii) Nutraceutical's trademark in its Boost Elite product, and (iii) Nutraceutical's trade dress rights in the packaging of the Zhou nutritional supplement products ("Zhou Trade Dress"), which include the Calm Now, DriftOff, Neuro Peak, Resveratol, Turmeric, K2+D3, Energy Focus, N.O. Pro, Horny Goat Weed, Hairfluence, Iron Beard, Tart Cherry, and Boost Elite products ("Zhou Products"). (Dkt. No. 43 ¶ 1.)

On this basis, Plaintiffs initiated the underlying suit against Defendant, alleging the following seven causes of action: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) Trademark – Federal Unfair Competition, False Representation, and False Designation of Origin under 15 U.S.C. § 1125; (3) Lanham Act – Trade Dress Infringement under 15 U.S.C. § 1125; Trade Dress – Federal Unfair Competition, False Representation, and False Designation of Origin under 15 U.S.C. § 1125; (5) Trade Dress Infringement under Common Law; (6) Unfair Competition under Common Law; and (7) Violation of the Utah Unfair Competition Act. (*Id.* ¶¶ 127-200.) Defendant asserts eleven affirmative defenses in its Answer to Plaintiffs' Complaint. (Dkt. No. 45.)

On July 8, 2020, Plaintiffs filed two motions for partial summary judgment. (Dkt. Nos. 56, 59.) The first of these motions seeks summary judgment on Plaintiff's first two causes of action (Dkt. No. 56), while the second seeks summary judgment on several of Defendant's asserted affirmative defenses. (Dkt. No. 59.) The primary matter at issue in Plaintiff's first

motion is Nutraceutical's trademark in its Boost Elite product. "Boost Elite" is a dietary supplement marketed as promoting testosterone levels, stamina, and energy. The trademark for the Boost Elite supplement prominently features the image of a raised clenched fist surrounded by a circle with the words "BOOST ELITE" appearing underneath the illustrated fist. (Dkt. No. 43 ¶ 30.)  Nutraceutical has used this mark to promote, advertise, and sell its Boost Elite product since at least May of 2016. (*Id.* ¶ 27.) The Boost Elite trademark was officially registered and assigned to NutraMarks, Inc.[1] ("NutraMarks") in 2017. In 2019, Defendant launched a product called "Tribulus." Tribulus is also marketed as a supplement that boosts testosterone and energy levels. Like Boost Elite, the Tribulus supplement bottle features the image of a raised clenched fist with the palm facing outward. Plaintiffs contend that the illustrated fist on Defendant's Tribulus product infringes on their Boost Elite trademark, thus entitling Plaintiffs to summary judgment on their trademark claims.

On July 8, 2020, Defendant also filed a motion for partial summary judgment. (Dkt. No. 63.) The primary issue in this motion is Defendant's alleged infringement of Nutraceutical's Zhou Trade Dress. Each of the Zhou Products have a specific color scheme and trade dress as described in paragraphs 40-45 and 72-110 of Plaintiffs' Second Amended Complaint. Plaintiffs allege that the packaging used on a number of Defendant's products is unlawful and confusingly similar to the Zhou Trade Dress because Defendant uses: (1) a stout, black bottle with a black corrugated cap, (2) a front label that is predominately white, (3) similar product color schemes, (4) similar placement and order of titles, labels, product descriptions, and quantity statement, (5) confusingly similar product logos, and (6) confusingly similar side labels and back labels. (Dkt.

---

[1] NutraMarks, Inc. is a wholly owned subsidiary of Nutraceutical.

No. 43 ¶¶ 77-117.) Defendant argues that it is entitled to summary judgment on Plaintiffs' trade dress claims because Plaintiffs cannot establish any infringement of the Zhou Trade Dress.

In addition to its motion for partial summary judgment, Defendant has moved to strike Plaintiffs' second motion for summary judgment (Dkt. No. 76) and to exclude report and testimony by Plaintiffs' expert. (Dkt. No. 62.)

The court will address each of the parties' five motions in the following analysis.

## ANALYSIS

### A. Defendant's Motion to Strike:

As an initial matter, the court addresses Defendant's motion to strike Plaintiffs' second motion for partial summary judgment. (Dkt. No. 76.) Defendant argues that Plaintiffs have violated DUCivR 56-1 by filing two separate motions for summary judgment. The court's local rules provide that "parties should *endeavor* to address all summary judgment issues in a single motion," and that "[i]f a party files more than one motion, the court *may* strike the motion and require that the motions be consolidated into a single motion." DUCivR 56-1(b)(1) (emphasis added). This clearly is not a strict mandate to combine all summary judgment motions, but rather an instruction to avoid multiple motions where appropriate. Plaintiffs' two motions for summary judgment deal with entirely different issues. Plaintiffs' first motion seeks summary judgment on several of their own claims, while Plaintiffs' second motion requests summary judgment on a number of Defendant's affirmative defenses. Under the circumstances, the court in its discretion will not require Plaintiffs to consolidate two discrete motions for summary judgment. Defendant's Motion to Strike (Dkt. No. 76) is DENIED.

B. **Plaintiffs' Motion for Partial Summary Judgment on Their First and Second Claims:**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). "For purposes of summary judgment, … the court examines the evidence to determine if a reasonable jury could return a verdict in favor of the nonmoving party. If it can, summary judgment should be denied." *WKB Enters., Inc. V. Ruan Leasing Co.*, 838 F. Supp. 529, 532 (D. Utah 1993).

Plaintiffs' first motion for summary judgment argues that Plaintiffs have successfully demonstrated trademark infringement of Plaintiffs' Boost Elite trademark and are thus entitled to summary judgment on their first and second causes of action.[2] Congress defines a trademark as "any word, name, symbol, or device, or any combination thereof … used by a person … to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. To prevail on a claim of trademark infringement, Plaintiffs must establish that (1) they have "a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that

---

[2] Plaintiffs initially also requested summary judgment for their seventh cause of action. However, Plaintiffs concede that "there are likely genuine issues of fact" relating to this cause of action, and have accordingly withdrawn their motion as it relates to the seventh cause of action in their Complaint. (Dkt. No. 95 at 30.)

the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1238 (10th Cir. 2013) (internal quotations and citations omitted).

In determining whether a likelihood of confusion exists, courts consider the following factors:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

*Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019).

The court finds that these six factors do not weigh sufficiently in favor of Plaintiffs to warrant summary judgment. The Boost Elite trademark and the Tribulus label both feature the image of a raised clenched fist with the palm facing outward. Both products are marketed to boost testosterone and energy. However, the fist in the Boost Elite trademark is surrounded by a circle with the words "BOOST ELITE" placed underneath the image in bold, capital letters. The clenched fist on the Tribulus product, on the other hand, has "TRIBULUS" placed above the fist with nothing encircling it.

Although similarities certainly exist between the Boost Elite and Tribulus labels, genuine issues of material fact remain as to the likelihood of confusion for consumers. Given the prominent display of the words "BOOST ELITE" and the distinctive circle surrounding the clenched fist on the Boost Elite supplement, a reasonable jury could find that Plaintiffs have not shown a significant degree of similarity between the Boost Elite trademark and the Tribulus label. There are also factual questions concerning Defendant's intent when it launched its Tribulus product, the degree of care likely to be exercised by consumers purchasing the products at issue, and the strength of the Boost Elite trademark. Accordingly, Plaintiffs' Partial Motion for

Summary Judgment on their first and second causes of action (Dkt. No. 56) is appropriately DENIED.

### C. Plaintiffs' Motion for Partial Summary Judgment on Defendant's Affirmative Defenses:

Plaintiffs have also moved for partial summary judgment on eight of Defendant's eleven affirmative defenses. (Dkt. No. 59.) Defendant bears the burden of proving its affirmative defenses because, "[b]y its nature, an affirmative defense does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven." *Lints v. Graco Fluid Handling (A) Inc.,* 347 F. Supp. 3d 990, 1009 (D. Utah 2018). Plaintiffs seek summary judgment on the grounds that Defendant has no evidentiary support to prove the affirmative defenses at issue.

Defendant does not contest and appears to concede summary judgment on its: Fourth Affirmative Defense (that the trade dress of Nutraceutical is not inherently distinctive or it has not acquired a secondary meaning); Seventh Affirmative Defense (that Nutraceutical has unclean hands); Eighth Affirmative Defense (laches); Tenth Affirmative Defense (misuse); and Eleventh Affirmative Defense (abandonment, acquiescence, estoppel, or waiver). Because Defendant does not offer any response or any additional evidence to support these defenses, summary judgment is GRANTED in favor of Plaintiffs as to these four affirmative defenses.

Defendant's Third Affirmative Defense is that Plaintiffs failed to mitigate their damages. To succeed under this defense, Defendant must prove that Plaintiffs could have reasonably avoided all or part of their claimed damages. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1230 (10th Cir. 2000). As evidence of Plaintiffs' failure to mitigate, Defendant asserts that Plaintiffs rejected Defendant's offer to remove the illustration of the

clenched fist from the Tribulus product label as a business compromise. However, Rule 408 of the Federal Rules of Evidence prohibit this settlement offer from being used here as evidence of Plaintiffs' failure to mitigate damages.[3] Under this rule, evidence of "furnishing, promising, or offering … a valuable consideration in compromising or attempting to compromise the claim" is not admissible "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. Accordingly, evidence of Defendant's offer is excluded under the plain language of Rule 408, and summary judgment is GRANTED in Plaintiffs' favor for Defendant's Third Affirmative Defense.

Under Defendant's Sixth Affirmative Defense, Defendant argues that any infringing activities related to the Boost Elite trademark are protected by the fair use doctrine. To prove the affirmative defense of fair use, Defendant must show: (1) Defendant is not using the image of the clenched fist as a trademark, (2) the image of the clenched fist is descriptive of the goods or services of Defendant, and (3) that such descriptive use is fair and made in good faith. *Overstock.com, Inc. v. Nomorerack.com, Inc.,* No. 2:13-CV-1095 TS, 2014 WL 2946646, at *8 (D. Utah June 30, 2014). The parties dispute whether the Tribulus label was being used as a

---

[3] Defendant contends that evidence of its offer to remove the illustrated fist is admissible as "evidence for another purpose" under Rule 408(b). *See* Fed. R. Evid. 408(b). The Tenth Circuit has not addressed this exception to Rule 408 in the context of proving or disproving mitigation of damages, but other circuits have weighed in on either side of this issue. *See Urico v. Parnell Oil Co.,* 708 F.2d 852, 854–855 (1st Cir.1983) (settlement evidence admissible regarding mitigation of damages); *Bhandari v. First Nat'l Bank of Commerce*, 808 F.2d 1082, 1103 (5th Cir.1987) (same); *Orzel v. Wauwatosa Fire Dep't*, 697 F.2d 743, 757 n. 26 (7th Cir.1983) (same); *but see Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827–29 (2d Cir.1992) (settlement evidence inadmissible regarding mitigation of damages as it goes to "amount" of the claim); *Stockman v. Oakcrest Dental Ctr., P.C.,* 480 F.3d 791, 797–798 (6th Cir.2007) (same).

While no binding authority yet exists for the court to follow, "the Tenth Circuit has stated that 'when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers.'" *Scavetta v. King Soopers, Inc.,* 2013 WL 2393070, at *2 (D. Colo. May 31, 2013) (citing *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir. 1987)).

trademark or attention-getting symbol, whether the illustrated fist is descriptive of the Tribulus product, whether Defendant had knowledge of the Boost Elite trademark when it launched its Tribulus product, and whether the use of the clenched fist image was made in good faith. The court finds that these are material factual questions that should be left to consideration before the jury. Accordingly, summary judgment against Defendant's affirmative defense of fair use is DENIED as it relates to the Boost Elite and Tribulus products.[4]

For Defendant's Ninth Affirmative Defense, it argues that Plaintiffs have abandoned the Boost Elite and Hairfluence trademarks and trade dress. A trademark is abandoned when its use has been discontinued with no intent to resume use, or when the owner causes the mark to become the generic name for the goods or services connected with the mark or to otherwise lose its significance. 15 U.S.C. § 1127. To support this affirmative defense, Defendant points to the facts that the Boost Elite trademark is owned solely by NutraMarks, a wholly owned subsidiary of Nutraceutical, and that only Nutraceutical uses the Boost Elite mark. Because there is no evidence that NutraMarks has ever used the Boost Elite mark, Defendant asserts that the trademark has been abandoned. The court finds that Defendant fails to prove that Plaintiffs have abandoned the use of their trade dress or trademarks. *See Lodestar Anstalt v. Route 66 Junkyard Brewery LLC,* 2019 WL 231755, at *16 (D.N.M. Jan. 16, 2019) ("A defendant asserting abandonment must strictly prove abandonment by clear and convincing evidence."). An implied license appears to exist between NutraMarks and Nutraceutical allowing Nutraceutical to use the trademarks at issue. For this reason, Nutraceutical's use of the Boost Elite and Hairfluence trademarks inured to NutraMarks' benefit and Defendant's abandonment defense fails.

---

[4] Defendant does not offer any evidence or raise any arguments to support its Sixth Affirmative Defense beyond the claims involving the Boost Elite trademark. Accordingly, summary judgment is only denied as to claims involving Boost Elite and Tribulus.

Accordingly, summary judgment is GRANTED in Plaintiffs' favor for Defendant's Ninth Affirmative Defense.

### D. Defendant's Motion for Partial Summary Judgment and Defendant's Motion to Exclude Plaintiffs' Expert Report and Testimony:

Defendant seeks summary judgment on Plaintiffs' Third, Fourth, Fifth, Sixth, and Seventh Causes of Action to the extent that the claims are based on Plaintiffs' asserted Zhou Trade Dress. (Dkt. No. 63.) The trade dress of a product is defined as "its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty Co. v. Beautyco, Inc.,* 304 F.3d 964, 977 (10th Cir. 2002). To prevail on a claim of trade dress infringement, Plaintiffs must demonstrate: "(1) that [their] trade dress is inherently distinctive or has become distinctive through secondary meaning; … (2) likelihood of confusion," and (3) that their trade dress is not functional. *Id.* Defendant argues that Plaintiffs cannot establish the requirements of either distinctiveness or likelihood of confusion.

#### *Distinctiveness and Secondary Meaning:*

First, Defendant asserts that Plaintiffs cannot show that their trade dress is either inherently distinctive or has become distinctive through secondary meaning. A trade dress is "inherently distinctive" if its "intrinsic nature serves to identify a particular source," meaning that the trade dress "almost *automatically* tell[s] a customer that [it] refer[s] to a brand and immediately signal[s] a brand or product source." *Id.* (emphasis in original).

Even if a trade dress is not inherently distinctive, it may acquire distinctiveness through secondary meaning in the marketplace. *Id.* Trade dress acquires secondary meaning when "its primary significance in the minds of potential consumers is no longer as an indicator of

something about the product itself but as an indicator of its source or brand." *Id.* Secondary meaning can be established through direct evidence, such as consumer surveys, or through circumstantial evidence, such as the length and manner of the trade dress's use, the nature and extent of advertising and promotion of the trade dress, the efforts made in promoting a connection in the public's mind between the trade dress and a particular product or venture, proof of intentional copying, or evidence of sales volume. *See Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1218 (10th Cir. 2004); *see also Sally Beauty,* 304 F.3d at 978.

Relevant to the issue of secondary meaning in this case, Defendant has moved to exclude the report and testimony of Plaintiffs' secondary meaning expert, Dr. Himanshu Mishra, under Rule 702 of the Federal Rules of Evidence. *See* Fed. R. Evid. 702. (Dkt. No. 62.) Defendant argues that Dr. Mishra's expert report is unreliable and inadmissible because the secondary meaning survey was conducted after the alleged infringement commenced and after the initiation of the instant litigation.[5] While the Tenth Circuit has not yet addressed the issue of post-infringement surveys, the court does not agree with Defendant that Dr. Mishra's secondary meaning survey should be deemed inadmissible simply because the survey was taken after this litigation began. We find that "[a] court may easily take into consideration the strength of recognition at the time of the survey in light of the amount of time passed between that date and the date of infringement." *Gen. Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 419 (6th Cir. 2006). Furthermore, it is unrealistic to expect Plaintiffs to have paid for a secondary meaning survey to be conducted years ago just in case a competitor might infringe on their trademarks or trade dress at some point in the future. *Id.* (admitting evidence of secondary meaning surveys

---

[5] This action was initiated on May 23, 2018. Plaintiffs allege that each of Defendant's initial infringements of the respective Zhou products occurred between May 2017 and June 2019. (Dkt. No. 70 ¶ 1.) Dr. Mishra's report is dated December 9, 2019, and the report indicates that Dr. Mishra conducted the underlying survey in October 2019. (Dkt. No. 70, Ex. 4.)

that were conducted years after the alleged infringement began, and finding that such admission was "the appropriate choice, given the relatively unlikely scenario that a company has conducted a pre-infringement survey and [the] Court's strong support for survey evidence in evaluating secondary meaning"). Finally, the court agrees with Plaintiffs that Defendant's concerns regarding the strength of Dr. Mishra's survey results go to weight rather than admissibility. Defendant's motion to exclude Dr. Mishra's report and testimony (Dkt. No. 62) is DENIED.

Dr. Mishra's report concludes that the trade dress for each of Nutraceutical's Zhou Products have acquired secondary meaning. (*See* Dkt. No. 70, Ex. 4.) In addition, Plaintiffs have offered evidence of extensive advertising efforts and a significant sales volume of the Zhou Products at issue prior to Defendant's entry into the marketplace. Plaintiffs have also shown evidence that Defendant had previous knowledge of Nutraceutical's Zhou Products because one of Defendant's co-founders purchased the Zhou Products before Defendant launched its own similar supplement products.

"Whether a trade dress has acquired secondary meaning is a question of fact and thus generally should not be decided at the summary judgment stage." *Sally Beauty,* 304 F.3d at 978. In light of this, and having considered Dr. Mishra's report, the court finds that genuine issues of material fact exist concerning whether Plaintiffs' asserted trade dress has acquired distinctiveness. Even without Dr. Mishra's secondary meaning survey and report, Plaintiffs have raised sufficient factual questions concerning distinctiveness to warrant consideration before a jury by demonstrating circumstantial evidence of their advertising and promotional efforts, sales volume, and Defendant's intent.

### *Likelihood of Confusion:*

Defendant also asserts that Plaintiffs cannot demonstrate a likelihood of confusion between the Zhou Trade Dress and the trade dress of Defendant's allegedly infringing products. The same six factors considered by the court for likelihood of confusion in the context of trademark infringement apply to the trade dress infringement analysis.[6] The key inquiry in the trade dress context is "whether there is a likelihood of confusion resulting from the total image and impression created by the defendant's product or package on the eye and mind of an ordinary purchaser." *Sally Beauty,* 304 F.3d at 979 (quoting *McCarthy on Trademarks* § 8:15).

The court finds that genuine issues of material fact exist concerning the likelihood of confusion for consumers between the trade dresses of the Zhou Products and Defendant's products at issue. While Defendant highlights a number of differences between the Zhou Trade Dress and the trade dress of its own products, the remaining similarities between the packaging of the Zhou Products and Defendant's products are sufficient to create triable issues of fact. The evidence on the record also raises factual questions concerning Defendant's knowledge and intent that warrant jury consideration. Furthermore, Defendant concedes that the fourth and fifth factors—similarity of products and degree of consumer care—weigh in favor of Plaintiffs. (Dkt. No. 63 at 37.) Having considered these factors and the evidence on the record, the court finds that a reasonable jury could determine that the total image and impression created by the packaging of Defendant's allegedly infringing products is confusingly similar to the trade dress of the corresponding Zhou Products.

---

[6] As discussed *supra,* these six factors include: (1) the degree of similarity between the parties' trade dresses; (2) the intent of the alleged infringer; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of Plaintiffs' trade dress.

Because genuine issues of material fact exist concerning the distinctiveness of the Plaintiffs' asserted trade dress and the likelihood of confusion, summary judgment is inappropriate. Defendant's Motion for Partial Summary Judgment (Dkt. No. 63) is accordingly DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 56), Defendant's Motion to Exclude Plaintiffs' Expert Report and Testimony (Dkt. No. 62), Defendant's Motion for Partial Summary Judgment (Dkt. No. 63), and Defendant's Motion to Strike Plaintiffs' Second Motion for Summary Judgment (Dkt. No. 76) are each hereby DENIED.

Plaintiffs' Motion for Partial Summary Judgment on Defendant's Affirmative Defenses (Dkt. No. 59) is GRANTED in part and DENIED in part. Summary judgment is granted against Defendant on its third, fourth, seventh, eighth, ninth, tenth, and eleventh affirmative defenses. Defendant's sixth affirmative defense of fair use remains as it relates to Boost Elite and Tribulus.

DATED this 30th day of October, 2020.

BY THE COURT:

Dee Benson
United States District Judge